# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

UNITED STATES OF AMERICA      )
                                         )
           Plaintiff,           )
                                         )     CRIMINAL NO. 2008-002
               v.                 )
                                         )
ROSNY LAGUERRE            )
                                       )
           Defendant.      )
_____ )

## MEMORANDUM OPINION

FINCH, J.

      THIS MATTER comes before the Court on a Motion to Suppress filed by Defendant Rosny Laguerre.  Defendant seeks to suppress items seized in connection with his arrest and his statements given on January 30, 2008.  The United States of America opposes Defendant's motion.  An evidentiary hearing was held on March 19, 2008.

## I.  FACTUAL FINDINGS

      On January 29, 2008 around 9:00 p.m., the Virgin Islands Police Department ("VIPD") was notified of a possible sighting of illegal aliens in the Divi Carina Bay area on the east end of St. Croix.  VIPD dispatched officers to the scene and, upon arriving, the officers discovered suspected illegal aliens in the bushes near Divi Carina Bay.  The VIPD officers detained three individuals and observed several others in the bush area.  The officers also observed a beige vehicle driving nearby.  The driver was slowing down and looking in the bushes.  Shortly thereafter, officers Samantha Simmonds and David Stevens arrived at the scene.  They were

advised of the observations and actions of the officers who had previously arrived at the scene. Officers Simmonds and Stevens then left the area and headed to Christiansted.

Shortly before arriving in Christiansted, while on Hospital Street, Simmonds and Stevens observed a silver Honda in front of them bearing a dealer's license plate mounted on the rear and a regular license plate on the rear windshield of the vehicle.  The officers noticed that several individuals were "packed" in the vehicle and the driver was driving erratically.  As they drove behind the silver Honda, the driver slowed down, veered off the road, and then got back onto the road.  Due to the officers' observations, they decided to pull the vehicle over.  When the vehicle turned onto Company street, the officers attempted to stop it by activating emergency strobe lights, blowing the horn and announcing "stop" and "pull over" using their vehicle's speaker system.  The driver did not attempt to stop the car, but rather, sped off and a chase through Christiansted ensued.

The vehicle eventually stopped in the vicinity of 38 Queen Cross Street where the driver, later identified as Defendant Rosny Laguerre, was ordered out of the vehicle, frisked and detained.  The officers noticed six passengers in Defendant's vehicle, only one of whom could speak English.  Most of the passengers were unable to give fixed addresses or any form of identification.  Two of the passengers wore pants that were wet at the legs with sand on them. All of the passengers were detained.

Officers from Immigration and Customs Enforcement ("ICE") arrived at the scene and a determination was made that the passengers were illegal aliens.  All detainees were then taken to the ICE facility located in Sunny Isles.  A search of Defendant's person uncovered several documents which were seized.  An interpreter could not be found until the following day, at

which time ICE agents advised Defendant of his rights and conducted a recorded interview of

him.  During the interview, Defendant admitted to picking up the passengers and driving them

into Christiansted.  Defendant stated that he recognized the passengers as Haitians and knew they

had entered illegally when he picked them up.  Defendant conceded that he knew it was against

the law to transport people who arrive in the territory illegally.


## II.  STANDARD OF REVIEW

The Fourth Amendment protects citizens "against unreasonable searches and seizures."

U.S. Const., amend. IV. 2  "What is reasonable depends upon all of the circumstances

surrounding the search or seizure and the nature of the search or seizure itself."  United States v.

Montoya de Hernandez, 473 U.S. 531, 537 (1985).  There is a presumptive requirement that

searches or seizures be carried out pursuant to a warrant. See Katz v. United States, 389 U.S.

347, 357 (1967)  ("[S]earches conducted outside the judicial process, without prior approval by

judge or magistrate, are per se unreasonable under the Fourth Amendment -- subject only to a

few specifically established and well-delineated exceptions.").  Evidence obtained during the

course of an unreasonable search and seizure can be suppressed and not admitted at trial.  See

Wong Sun v. United States, 371 U.S. 471, 485-86 (1963) (exclusionary rule requires suppression

of any evidence which is either the direct or indirect product of illegal police conduct).

In some instances, warrantless searches or seizures will be considered reasonable if based

on probable cause.  See Hill v. California, 401 U.S. 797, 804 (1971) ("[S]ufficient probability,

not certainty, is the touchstone of reasonableness under the Fourth Amendment").  For example,

police officers may lawfully arrest a suspect without a warrant if the officer has probable cause

to believe the suspect has committed a felony and the arrest does not occur in the suspect's home.  See Maryland v. Pringle, 540 U.S. 366, 373-74 (2003)  (upholding warrant-less arrest where police had probable cause to believe defendant had committed a felony after they found cocaine within his reach);  Michigan v. Royer, 452 U.S. 692, 700 (1981) (Every arrest is unreasonable unless supported by probable cause).

Probable cause exists whenever reasonably trustworthy information or circumstances within an arresting officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been or is being committed by the person being arrested.  Draper v. United States, 358 U.S. 307, 313 (1999); United States v. Myers, 308 F.3d 251, 255 (3d Cir. 2002); United States v. Laville, 480 F.3d 187, 194 (3d Cir. 2007).  While "probable cause to arrest requires more than mere suspicion…it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt."  Orsatti v. New Jersey State Police, 71 F.3d 480, 482-83 (3d Cir. 1995).

Even in the absence of probable cause, an officer may "stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" United States v. Sokolow, 490 U.S. 1, 7 (1989) (quoting Terry v. Ohio, 392 U.S. 1, 30 (1968)).  Accordingly, an officer may stop a mobile vehicle to investigate a reasonable and articulable suspicion that its occupants were involved in criminal activity.  United States v. Cuevas-Reyes, 2008 U.S. Dist. LEXIS 14523 at *6-7 (D.V.I. 2008) (citing Ornelas v. United States, 517 U.S. 690, 693 (1996) and United States v. Hensley, 469 U.S. 221, 226-27 (1985)).

Reasonable suspicion has been described as "a particularized and objective basis for suspecting the person stopped of criminal activity." Cuevas-Reyes, 2008 U.S. Dist. LEXIS 14523 at *7 (citing Ornelas, 517 U.S. at 695). The totality of the circumstances of each case are considered by the courts to determine whether reasonable suspicion exists. United States v. Arvizu, 534 U.S. 266, 273-74 (2002). Police officers may use their own experience and training "to make inferences . . . and deductions about the cumulative information available to them that might well elude an untrained person." Cuevas-Reyes, 2008 U.S. Dist. LEXIS 14523 at *7 (quoting Arvizu, 534 U.S. at 273-74). However, reasonable suspicion may not be based on an officer's hunch alone. Cuevas-Reyes, 2008 U.S. Dist. LEXIS 14523 at *7. The likelihood of criminal activity required for reasonable suspicion need not rise to the level required for probable cause. Id.; Arvizu, 534 U.S. at 273-74.

Reasonable suspicion and probable cause are determined with reference to the facts and circumstances within the officer's knowledge at the time of the investigative stop or arrest. Devenpeck v. Alford, 543 U.S. 146, 152 (2004); Florida v. J.L., 529 U.S. 266, 271, (2000); Laville, 480 F.3d. at 194. The validity of an investigative stop or arrest does not depend on whether the suspect actually committed a crime. See Arvizu, 534 U.S. at 277 ("[a] determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct"); Gerstein v. Pugh, 420 U.S. 103, 119-123 (1975) (mere fact that suspect is later acquitted of offense for which he is arrested is irrelevant to the validity of arrest). The appropriate inquiry, rather, is whether the facts and circumstances within the officer's knowledge at the time of an investigative stop or arrest objectively justify that action. Devenpeck, 543 U.S. at 153; see also Whren v. United States, 517 U.S. 806, 813, (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis"); Pringle, 540 U.S. at 371 (in considering

whether probable cause exists, courts "examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause").

" In determining whether an arrest is reasonable under the Fourth Amendment, courts must never lose sight of the fundamental principle that 'reasonable suspicion and probable cause…are commonsense, nontechnical conceptions that deal with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" Laville, 480 F.3d. at 196 (quoting Ornelas, 517 U.S. at 695 and Illinois v. Gates, 462 U.S. 213, 231 (1983)).  The Third Circuit has held that district courts "must apply a common sense approach, based on the totality of the circumstances to determine whether there was probable cause to arrest."  Paff v. Kaltenbach, 204 F.3d 425, 436 (3d Cir. 2000); see also Sharrar v. Felsing, 128 F.3d 810, 818 (3d Cir. 1997) (stating that courts must "use a 'common sense' approach to the issue of probable cause").


### III. DISCUSSION

Defendant argues that the stop of his vehicle on January 29, 2008, and his subsequent arrest, occurred in violation of his rights under the Fourth Amendment. Def.'s Mot. to Suppress at 1.  Defendant submits that the stop, search, and arrest was without reasonable suspicion or any other legal justification.  Id.  Defendant claims that any evidence obtained as a result of the arrest and search should be suppressed as the fruit of the poisonous tree.  Id.  Because Defendant did not suggest in his Motion to Suppress or at the evidentiary hearing that the voluntariness of his statements is at issue, the Court will not address this issue.

Considering the facts of this case together with all reasonable inferences, the Court finds that by the time officers approached Defendant and his passengers on Company street, they had, at the very least, reasonable suspicion to believe that criminal activity was taking place.  See Terry, 392 U.S. at 27; Laville, 480 F.3d. at 195.  Officers were aware that suspected illegal aliens were apprehended in the vicinity of Divi Carina Bay earlier that day, that other suspected non-apprehended illegal aliens were believed to be in that area, and that an occupant of a beige vehicle was searching the area.  See Pl.'s Opp. to Mot. to Suppress at 5.  The officers observed Defendant's vehicle "packed" with passengers and driving erratically about eight miles from the area where suspected illegal aliens had been spotted.  Id.  Facts indicating wrongdoing on Defendant's part, prior to his flight, were plainly present here.

These circumstances gave rise to a reasonable suspicion and even if no additional events had transpired, the officers would have been justified in performing an investigative stop of Defendant and his passengers.  See United States v. Sharpe, 470 U.S. 675, 682 n.3 (1985) (finding reasonable suspicion based on officer's observation that truck had camper shell similar to those often used to transport drugs that was driving with a car and evading police); see also Arvizu, 534 U.S. at 274 (explaining that degree of certainty required to establish reasonable suspicion is less than that required for probable cause).  Because there was objectively reasonable suspicion to stop Defendant's vehicle, the initial stop of all of its occupants was also lawful.  See, e.g., Maryland v. Wilson, 519 U.S. 408, 414 (1997) (holding that officers could not only stop passengers but order them out of the vehicle during a lawful stop without violating their Fourth Amendment rights).  As it so happened, however, subsequent events heightened the officers' reasonable suspicion to the level of probable cause, justifying an arrest.  See Laville, 480 F.3d. at 195.

7

When Defendant saw the police vehicle's lights, he immediately sped up and led the police on a chase through town. Defendant deliberately tried to evade the police when he fled and this conduct ripened the officers' reasonable suspicion into probable cause. See Florida v. Royer, 460 U.S. 491, 497-98, (1983). It is "well established that where police officers reasonably suspect that an individual may be engaged in criminal activity, and the individual deliberately takes flight when the officers attempt to stop and question him, the officers generally no longer have mere reasonable suspicion, but probable cause to arrest." United States v. Sharpe, 470 U.S. 675, 705 (1985); see also Sibron v. New York, 392 U.S. 40, 66-67 (1968) ("[D]eliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of mens rea, and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime, they are proper factors to be considered in the decision to make an arrest"); 2 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 3.6 (4th ed. 2007) ("[I]f there already exists a significant degree of suspicion concerning a particular person . . ., the flight of that individual upon the approach of the police may be taken into account and may well elevate the pre-existing suspicion up to the requisite Fourth Amendment level of probable cause").

Before officers seized Defendant by stopping him at 38 Queen Cross Street, they witnessed Defendant committing several offenses, such as failing to obey a lawful order, negligent driving, failing to stop for at least one stop sign and possibly speeding. See United States v. Mosley, 454 F.3d 249, 252 (3d Cir. 2006) (noting that Supreme Court established bright-line rule that any technical violation of traffic code legitimizes a stop, even if stop is merely pretext for investigation of some other crime). When Defendant fled at the sight of the approaching officers, the officers no longer merely had reasonable suspicion to believe that

criminal activity was taking place.  They now had probable cause to make an arrest.  See <u>Illinois</u>
<u>v. Wardlow</u>, 528 U.S. 119, 124 (2000) ("Headlong flight--wherever it occurs--is the consummate
act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of
such").

The officers' observations subsequent to the stop of Defendant also support a finding of
probable cause.  See <u>Laville</u>, 480 F.3d at 195 (holding that probable cause existed to arrest
defendant for alien smuggling offenses where, while investigating tip that boat had run aground
in harbor and illegal aliens were coming ashore, officer saw such a boat in harbor, and group of
persons sitting nearby on boardwalk identified themselves as Cubans who had come off boat,
amongst other facts).  The officers in this case observed six passengers in Defendant's vehicle, at
least five of which were determined to be illegal aliens.  Neither Defendant nor any of the
passengers spoke English and they were unable to answer the officers' questions regarding their
residence.  Several of the passengers had wet sand on their pants and one had grass in her hair,
supporting the officers' suspicion that these individuals had come from the Divi Carina Bay area.
"Under Virgin Islands law, local law enforcement officers have authority to arrest for violations
of federal immigration laws" and, given the totality of the circumstances, the officers had
probable cause to arrest Defendant.  See <u>Laville</u>, 480 F.3d at 198 (<u>citing</u> <u>United States v.</u>
<u>Santana-Garcia</u>, 264 F.3d 1188, 1193-94 (10th Cir. 2001)).

The Court finds that the officers' arrest of Defendant was legally justified and did not
violate Defendant's Fourth Amendment rights. <u>See</u> <u>Michigan v. DeFillippo</u>, 443 U.S. 31, 35
(1979) ("Under the Fourth and Fourteenth Amendments, an arresting officer may, without a
warrant[,] search a person validly arrested").  Accordingly, Defendant's statement and items
seized pursuant to his lawful arrest were obtained without violation of his Constitutional rights.

9

## IV. CONCLUSION

The Court finds that the stop, detention and subsequent arrest of Defendant was based on probable cause.  For the reasons stated above, the Motion to Suppress is **DENIED** as to Defendant.


**ENTERED this 2 day of April, 2008.**


                                        /s/
                            **HONORABLE RAYMOND L. FINCH**
                            **U.S. DISTRICT JUDGE**